# CRIMINAL COMPLAINT

COPY

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>MIGUEL RODRIGUEZ-DORANME and<br>JOSE GUADALUPE ZEPEDA-RAMIREZ | DOCKET NO.<br><br>MAGISTRATE CASE NO. **M 16 0064**0 |

Complaint for violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vii), and Title 18, United States Code, Section 2(a)

| NAME OF MAGISTRATE JUDGE<br>THE HONORABLE ~~FREDERICK F. MUMM~~ PAUL L. ABRAMS | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>March 27, 2016 | PLACE OF OFFENSE<br>Santa Barbara County | ADDRESS OF ACCUSED (IF KNOWN) | FILED<br>CLERK, U.S. DISTRICT COURT<br><br>MAR 29 2016<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY            DEPUTY |
|---|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii) & 18 U.S.C. § 2(a)]

On or about March 27, 2016, in Santa Barbara County, within the Central District of California, defendants MIGUEL RODRIGUEZ-DORANME ("RODRIGUEZ-DORANME") and JOSE GUADALUPE ZEPEDA-RAMIREZ ("ZEPEDA-RAMIREZ") knowingly possessed at least 1,000 kilograms of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, with the intent to distribute it to another person, and/or aided, counseled, commanded, induced or procured the possession with intent to distribute of at least 1,000 kilograms of a mixture or substance containing a detectable amount of marijuana.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**ANDREW R. BUTLER**        /S/ |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – Homeland Security Investigations |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE<br>PAUL L. ABRAMS | DATE<br>March 29, 2016 |
|---|---|

AUSA Anil J. Antony x6579 / SAUSA Rebecca Shults x3144        REC: Detention

## AFFIDAVIT

I, Andrew Butler, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") and am presently assigned to the HSI's Ventura, California office. I have been employed as a Special Agent with HSI since March of 2009. Prior to my employment with HSI, I was a U.S. Border Patrol Agent with U.S. Customs & Border Protection ("CBP"). In total, I have been employed as a federal law enforcement officer since October of 2005.

2. I have successfully completed the HSI Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). In this program, I learned a number of investigative techniques, and was evaluated on multiple different subjects of investigation, including narcotics trafficking and narcotics smuggling. I have previously investigated narcotics related crimes.

3. My current responsibilities include investigations of violations of federal criminal laws, including crimes involving, inter alia, narcotics trafficking and narcotics smuggling. As a Special Agent with HSI, I have investigated and interviewed individuals concerning various violations, including violations under Title 21 of the United States Code. Additionally, I have

conducted numerous arrests, executed numerous search and arrest warrants, and interviewed numerous suspects and witnesses.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against Miguel RODRIGUEZ-DORANME and Jose Guadalupe ZEPEDA-RAMIREZ for the possession, with intent to distribute, of a controlled substance, that is, marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vii), and aiding and abetting the possession, with intent to distribute, of a controlled substance, that is, marijuana, in violation of Title 18, United States Code, Section 2(a).

5. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

6. On the morning of March 27, 2016, RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ were detained by personnel from the Santa Barbara County Sheriff's Office, in close proximity to a "panga" boat containing a substantial load of marijuana. Law enforcement officers have determined that the panga contained

approximately 3,645 pounds of marijuana, including the packaging material. In subsequent Mirandized and recorded interviews, RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ confessed that they had piloted the panga from Mexico to the United States and were aware that the panga contained a large shipment of marijuana.

### IV. TRAINING AND EXPERIENCE ON MARITIME DRUG SMUGGLING OPERATIONS

7. Based on my training and experience as an HSI Special Agent, I am aware that maritime narcotics smuggling operations in Southern California, including operations to smuggle marijuana into the United States by boat, typically operate as follows:

  a. Narcotics smugglers who intend to bring narcotics into the United States illegally bring narcotics to areas in Mexico near the United States-Mexico border. Narcotics smugglers will often bring narcotics into the United States by boat, often using a small, open, outboard-motor fishing boat with a distinct appearance known as a "panga."

  b. The laws of the United States prohibit the importation of narcotics into the United States unless certain legal requirements are met. Narcotics smugglers do not present smuggled narcotics for inspection to determine if said legal requirements were met. Instead, narcotics smugglers often conceal narcotics within boats in order to circumvent United States laws.

  c. After surreptitiously crossing the United States-Mexico border by boat, narcotics smugglers travel to pre-determined areas where the narcotics will be unloaded from the

boat and loaded into waiting vehicles called "load vehicles." Based on my training and experience, I know that, prior to meeting with the "load vehicles," smugglers will often "stage" near the Channel Islands, oftentimes using the Channel Islands for cover, or hiding in the small caves, until nighttime hours when they will head in toward the mainland coast to land.

        d.    Narcotics smugglers will often contact accomplices onshore who will inform them exactly where to direct the boat to meet the waiting "load vehicles." Once unloaded into load vehicles, the narcotics are then typically transported to locations, known as "stash houses," where the narcotics are parceled off to narcotics dealers. Many such stash houses are located in the greater Los Angeles area.

## V.   STATEMENT OF PROBABLE CAUSE

### A.   Arrest of ZEPEDA-RAMIREZ and RODRIGUEZ-DORANME

8.    On or about March 24, 2016, I spoke to my supervisor, Ron Liljedahl, and he informed me that United States Coast Guard ("USCG") personnel had observed a "panga" type open-bowed fishing vessel in the open ocean approximately 14 hours travel time from the coast of the Santa Barbara County. The USCG later lost sight of the panga.

9.    On March 27, 2016, I was contacted by Staff Sgt. Marcel Parra of the California National Guard ("CNG") that CNG aircraft observed a panga fitting the same description offshore from Gaviota State Park/Hollister Ranch Rd., which is located on a private beach community in Santa Barbara County. The vessel was observed traveling at a high rate of speed along the Gaviota

4

coastline at approximately 5:30 am on March 27, 2016. Shortly after making visual contact with the vessel, CNG lost sight of the panga near Gaviota State Park/Hollister Ranch Road.

10. On March 27, 2016, I spoke to Detective Chris Dallenbach with the Santa Barbara County Sheriff's Office ("SBCSO"), and learned the following information:

    a. Det. Dallenbach was working uniformed patrol in Buellton, California on the morning of March 27, 2016. At approximately 11:26 a.m. he received a call from a SBSCO dispatcher stating that a security officer at Hollister Ranch, a privately patrolled beach community, had called the SBCSO requesting assistance. The dispatcher informed Det. Dallenbach that an unknown resident had contacted the private security officer and reported a beached boat within the community and two people on the beach. SBCSO Sgt. Brian Thielst, who was assigned nearby at Goleta, responded to the scene a few minutes after Det. Dallenbach.

    b. The particular part of the coastline where the panga landed and was found is very remote. The nearest fuel/market/food is in Buellton, which is approximately 14 miles to the north, or Winchester Canyon, approximately 24 miles to the south. There are no nearby services or neighborhoods along that stretch of coastline, except a few ranch homes off the roadway. US 101 runs between the two towns.

    c. Det. Dallenbach arrived at the Hollister Ranch gate at approximately 11:54 am and spoke with the security guard at the gate. The guard at the gate informed him that another

5

security guard was near the beach near a train trestle. Det. Dallenbach drove westbound for approximately 1.25 miles from the gate until he came to an access point for Alegria Beach, where he observed two Hispanic males sitting at a picnic table. A non-uniformed male was standing nearby, holding a two-way radio. Det. Dallenbach believed that the male with the two-way radio was a private security guard, but the man left before Det. Dallenbach could confirm his identity.

      d.    Det. Dallenbach had arranged for a California Highway Patrol ("CHP") officer to follow him into the ranch and pull in behind him at the beach. The CHP officer stood by as Det. Dallenbach detained the two males with handcuffs. The two men who were detained both claimed to not speak any English, and Det. Dallenbach had only a limited ability to speak Spanish. The men informed Det. Dallenbach, however, that their names were Jose ZEPEDA-RAMIREZ and Miguel RODRIGUEZ-DORANME.

      e.    Det. Dallenbach observed that both men were wet and sandy up to their knees and/or their thigh areas. Both men were sunburned and/or wind burned. ZEPEDA-RAMIREZ had no identification but did have a white cell phone with him. RODRIGUEZ-DORANME had a wallet with a Mexican Driver's License, and had two cell phones as well. Det. Dallenbach asked ZEPEDA-RAMIREZ and RODRIGUEZ-DORANME if they needed water. They responded that they were not thirsty but were very hungry.

      f.    Shortly thereafter, Sgt. Thielst arrived. Seeing that ZEPEDA-RAMIREZ and RODRIGUEZ-DORANME were safely secured, Sgt. Thielst went to look for the boat that had been reported as

being on the shore, and attempted to locate additional persons. Out of concern for officer safety, Det. Dallenbach asked RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ if there were any other people on the boat. Det. Dallenbach was informed that there were no other people on that panga, but that there were six other individuals on a second boat. Det. Dallenbach was informed, however, that the second boat had turned around and went back out to sea. Det. Dallenbach was informed that the second boat, which had six individuals onboard, was also transporting marijuana. RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ indicated that they were the only individuals on the boat that landed on shore.

   g. Det. Dallenbach informed Sgt. Thielst that there might be more individuals and/or a second panga boat. Sgt. Thielst had already requested that personnel in a SBCSO helicopter check the shoreline eastbound and westbound. The helicopter arrived shortly thereafter and checked the surrounding area, but was unable to locate any additional individuals or boats.

   h. Sgt. Thielst returned from the beach and informed Det. Dallenbach that he had found the panga that RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ had piloted, down on the beach. Sgt. Thielst stated that it was still loaded with bales of marijuana.

   i. Sgt. Thielst instructed Det. Dallenbach to transport ZEPEDA-RAMIREZ and RODRIGUEZ-DORANME to the SBCSO's Headquarters. Det. Dallenbach then secured ZEPEDA-RAMIREZ's and RODRIGUEZ-DORAME's personal property and drove them to the SBCSO

Headquarters. Det. Dallenbach placed ZEPEDA-RAMIREZ and RODRIGUEZ-DORAME into their "Detective Bureau" interview room, and started a recording device, while the officers waited for HSI agents to arrive. Santa Barbara Sheriff personnel were at the station and monitored ZEPEDA-RAMIREZ and RODRIGUEZ-DORANME until HSI agents arrived to take them into custody.

    B.   Interview of RODRIGUEZ-DORANME

    11.  That evening, HSI SA Jon Bigler and Supervisory SA Carlos Ortiz conducted a recorded interview of RODRIGUEZ-DORANME. I learned the following information from SA Jon Bigler:

        a.   RODRIGUEZ-DORANME was cooperative; he waived his Miranda rights and agreed to speak with the agents.

        b.   RODRIGUEZ-DORANME stated that he is a fisherman, but that he wanted to come to the United States to work. He said that he piloted the panga in lieu of paying smugglers to transport him into the United States. In other words, he did not receive a fee for piloting the panga, but intended to stay illegally in the United States. RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ met in December of 2015, and RODRIGUEZ-DORANME told ZEPEDA-RAMIREZ about coming into the U.S. with a panga. RODRIGUEZ-DORANME told ZEPEDA-RAMIREZ that the payment would be crossing into the United States for free.

        c.   RODRIGUEZ-DORANME knew that he was smuggling drugs in the panga, and knew from news accounts that pangas were used to smuggle illegal narcotics.

d. RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ were out at sea for approximately a week; they left Mexico on March 21, 2016, at approximately 8:00 p.m., from Baja California, Mexico. Two panga boats left together — a smaller panga, which RODRIGUEZ-DORANME piloted, and second, much larger panga. RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ were the only individuals on the smaller panga. There were six individuals on the larger panga. The larger panga was carrying more than twice the amount of marijuana bales than the small one that RODRIGUEZ-DORANME piloted. RODRIGUEZ-DORANME stated that the larger panga was approximately 50-55 feet in length and had 5-6 engines, and, during the trip, would go ahead of the smaller panga.

e. RODRIGUEZ-DORANME said the plan was for the two pangas to meet at San Miguel Island, which I know is approximately 23 nautical miles south off the coast of Point Concepcion, CA. The two panga boats were together until the morning of Sunday, March 27, 2016.

f. On the morning of March 27, 2016, RODRIGUEZ-DORANME said that individuals on the larger panga took all the gas from the panga that RODRIGUEZ-DORANME was piloting, and told him to pilot his panga to shore. RODRIGUEZ-DORANME stated that, shortly before RODRIGUEZ-DORANME landed the smaller panga, the larger panga left them enroute to passing Santa Rosa Island. After RODRIGUEZ-DORANME was shown a map of the area, RODRIGUEZ-DORANME stated that his panga and the larger panga waited out at sea near Santa Rosa Island, near a light house, before heading toward land.

### C. Interview of ZEPEDA-RAMIREZ

12. Later during the evening of March 27, 2016, HSI SAs Bigler and Charles Gist conducted a recorded interview of ZEPEDA-RAMIREZ. I learned the following information from SA Bigler:

   a. ZEPEDA-RAMIREZ was cooperative; he waived his Miranda rights and agreed to speak with the agents.

   b. ZEPEDA-RAMIREZ stated that he met RODRIGUEZ-DORANME in Ensenada, Mexico and that RODRIGUEZ-DORNAME had asked ZEPEDA-RAMIREZ to head north with him. ZEPEDA-RAMIREZ confirmed that the two panga boats that RODRIGUEZ-DORANME mentioned left from Ensenada, Mexico on Monday or Tuesday of the prior week. He and RODRIGUEZ-DORANME had initially lost contact with the other panga while out at sea, but later regained contact after calling someone on the larger panga.

   c. Both panga boats were carrying bales of marijuana, but that the larger panga had more. ZEPEDA-RAMIREZ confirmed that individuals on the larger panga had taken gas from the smaller panga. Accordingly, the smaller panga, which contained RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ, was almost out of fuel when RODRIGUEZ-DORANME and ZEPEDA-RAMIREZ headed toward the coast while the other panga went north.

   d. After they landed the smaller panga, ZEPEDA-RAMIREZ and RODRIGUEZ-DORANME got off the panga and walked up a hill. ZEPEDA-RAMIREZ said that they then spoke to someone in a pickup truck, and that the police arrived shortly afterward to arrest them.

### D. Field Test and Approximate Weight of Marijuana

13. On March 28, 2016, I spoke to HSI SA James Kessel who informed me that HSI agents conducted a field test of randomly selected bundles pulled from the panga boat. The field test had confirmed the bundles contained a substance that has chemical properties consistent with that of marijuana.

14. HSI agents determined the approximate weight of the marijuana, including wrapping, to be approximately 3,645 pounds, or 1,656 kilograms.

## VI. CONCLUSION

15. For all the reasons described above, there is probable cause to believe that ZEPEDA-RAMIREZ and RODRIGUEZ-DORANME illegally possessed with intent to distribute a controlled substance, that is, marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vii), and aided, abetted, counseled, commanded, induced, and procured the possession with intent to distribute a controlled substance, that is, marijuana, in violation of Title 18, United States Code, Section 2(a).

/s/
_____
ANDREW BUTLER, Special Agent
Homeland Security
Investigations

Subscribed to and sworn before me
this 29th day of March, 2016.

PAUL L. ABRAMS
_____
HONORABLE ~~FREDERICK F. MUMM~~
UNITED STATES MAGISTRATE JUDGE